UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONALD J. DEVERSO,

        Petitioner,

vs.                       Case No.  2:09-cv-660-FtM-29SPC
                                  Case No.  2:05-cr-034-FtM-29SPC

UNITED STATES OF AMERICA,

        Respondent.
_____

**OPINION AND ORDER**

This matter comes before the Court on petitioner Donald J. Deverso's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #181)[1] filed on October 5, 2009. Petitioner supplemented this motion with a Supplement Due to an Intervening Change in Law (Cv. Doc. #6) on October 22, 2009, and filed another Supplement to Motion 28 U.S.C. § 2255 (Cv. Doc. #7) on December 4, 2009. The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Cv. Doc. #8) on December 4, 2009. Petitioner filed a Reply to the Response of the United States (Cv. Doc. #10) on December 29, 2009. Additionally, petitioner filed a Motion for

_____

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this Opinion and Order. The Court will refer to the docket of the civil habeas case as "Cv. Doc.", and will refer to the underlying criminal case as "Cr. Doc."

Summary Judgment on his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Cv. Doc. #21) on September 16, 2010.

Also before the Court are petitioner's Motion for Discovery and Inspection (Cv. Doc. #13) and Motion to Recuse and Disqualify Judge (Cv. Doc. #15) and supporting Affidavit (Cv. Doc. #16).

For the reasons set forth below, all of petitioner's motions are denied.

## I.

On April 13, 2005, a federal grand jury in Fort Myers, Florida, returned an Indictment (Cr. Doc. #1) against Donald J. Deverso (petitioner or Deverso). In due course, a Second Superceding Indictment (Cr. Doc. #42) was filed charging petitioner with three felony offenses: Possession of materials involving a depiction of a minor engaged in sexually explicit activity, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count One); transporting materials involving a depiction of a minor engaged in sexually explicit activity, in violation of 18 U.S.C. § 2252(a)(1) (Count Two); and using a minor to engage in sexually explicit conduct outside of the United States for the purpose of producing a visual depiction of such conduct and transporting the visual depiction into the United States, in violation of 18 U.S.C. § 2251(c)(2)(B) (Count Three). A jury trial began on May 15, 2006, and the jury found petitioner guilty of all three counts on May 19,

2006.   (Cr. Doc. #122.)   On October 30, 2006, petitioner was sentenced to a term of imprisonment of 120 months as to Count One, 195 months as to Count Two, and 195 months as to Count Three, to be served concurrently.   (Cr. Doc. #169.)   Petitioner was also sentenced to a life term of supervised release following the period of incarceration.   (Id.)

Petitioner appealed his convictions and sentences (see Cr. Doc. #147), and on March 5, 2008, the Court of Appeals for the Eleventh Circuit affirmed (Cr. Doc. #173) in a published opinion. United States v. Deverso, 518 F.3d 1250 (11th Cir. 2008).   No petition for certiorari was filed with the United States Supreme Court.

On May 22, 2009, petitioner filed a Motion to Stay Time Limitation for Filing Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 or in the Alternative Apply Equitable Tolling of the Limitation to Avoid Defendant's Untimely Filing of § 2255 Because of Extraordinary Circumstances.   (Cr. Doc. #177.)   This motion was denied by the Court on May 27, 2009.   (Cr. Doc. #178.)

Petitioner's Motion Under 28 U.S.C. § 2255 was filed on October 5, 2009.   (Cv. Doc. #1; Cr. Doc. #181.)   The motion was dated September 29, 2009, and in the absence of evidence to the contrary the Court will presume it was delivered to prison authorities to be mailed on the same date.   Washington v. United

States, 243 F.3d 1299, 1301 (11th Cir. 2001).  Therefore the motion is deemed to have been filed on September 29, 2009.  Because petitioner is proceeding *pro se*, his pleadings are construed liberally.  Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

## II.

The United States argues that petitioner's § 2255 motion is untimely, that petitioner has not established an entitlement to equitable tolling, and that the § 2255 motion must therefore be dismissed.  (Cv. Doc. #8, pp. 10-11.)  Petitioner has set forth a factually detailed chronology which, read liberally, argues that he is entitled to equitable tolling which results in a timely petition.  (Cv Doc. #1-3, pp. 1-42.)  Unlike an appellate court, Gonzalez v. Secretary, Florida Dep't Of Corr., No. 09-15599, 2011 WL 6508 at *1 (11th Cir. Jan. 3, 2011), a district court is required to resolve such a disputed issue regardless of whether the § 2255 motion is granted or denied.  Long v. United States, 626 F.3d 1167, 1169 (11th Cir. 2010).

Federal prisoners whose convictions became final after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), have one year from the latest of any of four events to file a § 2255 motion: (1) the date on which the judgment of conviction becomes final; (2) the date on which any government-imposed impediment to making the motion is removed; (3)

the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).  See also Gooden v. United States, 627 F.3d 846, 848 (11th Cir. 2010).  The only applicable triggering event in this case is the date petitioner's judgment of conviction became final.

The Court of Appeals for the Eleventh Circuit affirmed petitioner's convictions on March 5, 2008, (Cr. Doc. #173), and no petition for a writ of certiorari was filed.  "[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme Court] on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."  Clay v. United States, 537 U.S. 522, 532 (2003); see also Kaufmann v. United States, 282 F.3d 1336, 1337 (11th Cir. 2002).  The time for seeking certiorari review expires 90 days after entry of the appellate judgment or order sought to be reviewed.  Michel v. United States, 519 F.3d 1267, 1268 n.1 (11th Cir. 2008).  Accordingly, § 2255's one-year limitation period for petitioner started to run on June 3, 2008, when the time for filing a petition for a writ of certiorari expired.  Therefore, petitioner had until June 3, 2009, to file a motion under 28 U.S.C. § 2255.

Petitioner's § 2255 motion was deemed filed on September 29, 2009, several months beyond the one year limitation period.  Unless equitable tolling applies and excludes a sufficient number of days, the § 2255 motion must be dismissed.

Petitioner essentially argues that his time to file the § 2255 petition should be tolled because of the professional misconduct by his appellate attorney.  The Eleventh Circuit has routinely considered equitable tolling in the context of § 2255 motions, applying the same standards as in § 2254 cases.  See Mazola v. United States, 294 F. App'x 480 (11th Cir. 2008).  Equitable tolling is available if a petitioner shows that he has been pursuing his rights diligently and that some extraordinary circumstance prevented timely filing; the professional misconduct of counsel can under some circumstances satisfy the extraordinary circumstance requirement.  Holland v. Florida, 130 S. Ct. 2549 (2010)(holding that equitable tolling is applicable to a § 2254 petition).

Petitioner has established that he requested his appellate attorney to file a petition for writ of certiorari with the United States Supreme Court, and that his attorney told him in writing on March 25, 2008, April 10, 2008, and June 12, 2008, that he was preparing, and would file, such a petition.  Appellate counsel did not file the petition.  Petitioner asserts that on October 28, 2008, family members met with his appellate counsel and were told

for the first time that a petition for a writ of certiorari had not been filed.  By a letter dated December 2, 2008, petitioner inquired of the Eleventh Circuit Court of Appeals whether a petition for a writ of certiorari had been filed.  By letter dated December 9, 2008 the Eleventh Circuit responded that it did not appear that such a petition had been filed.  Petitioner thereafter asked for various relief from the Eleventh Circuit aimed at allowing him to file a belated petition for writ of certiorari, but his requests were denied.  Had appellate counsel filed the petition for a writ of certiorari, as petitioner requested and as counsel committed to do, the one year statute of limitations would not have begun when it did because a conviction does not become final until the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari."  Clay, 537 U.S. at 527.

The record establishes that petitioner has satisfied the requirements of equitable tolling.  Petitioner diligently pursued his legal right to have a petition for a writ of certiorari filed by retained appellate counsel.  Counsel repeatedly assured petitioner that he would do so and was working on the petition. Petitioner justifiably relied upon counsel's representations, and initially had no reason to believe the petition had not been filed. The earliest petitioner could be deemed to have knowledge to the contrary is October 28, 2008, when his family members learned the

truth.  Even if this information is attributed to petitioner as of
the date it was received by family members, and the limitations
period is only tolled until that date, petitioner has still filed
his § 2255 motion within the resulting one year period, i.e., prior
to October 28, 2009.  The Court finds that after considering
equitable tolling, petitioner's §2255 motion is timely filed and
should not be dismissed.

## III.

The Eleventh Circuit Court of Appeals summarized the trial
facts in the case as follows:

> In 2004, the Department of Homeland Security ("DHS")
> received information regarding Deverso's foreign travel
> and began investigating him for possessing child
> pornography and traveling abroad to engage in sex with
> minors. DHS investigators interviewed Deverso's wife,
> Zong Yu Deverso ("Mrs. Deverso"). Mrs. Deverso turned
> over to investigators various computer media and
> printouts that she surreptitiously obtained from Deverso.
> Deverso was in some of the pictures that depicted young
> girls in various stages of undress. Investigators
> discovered that one of the girls in the pictures was
> Beverly Datanagan ("Beverly").
>
>     During a subsequent search of Deverso's residence
> pursuant to a valid search warrant, investigators found
> compact and floppy disks, computer components, and a
> computer. Deverso originally set up his computer in a
> small room or closet that the family used for a nursery.
> It was the only computer with internet access, and
> Deverso's account was the only account that was password
> protected. Investigators reviewed the compact disks
> seized from Deverso's residence and discovered two disks,
> entitled MM Texas and Asians 7, that contained child
> pornography. One of the investigators testified that he
> had seen some of the images on the compact disks in other
> child pornography investigations.

One of Deverso's fellow inmates, Michael Lewis ("Lewis"), testified that Deverso admitted that he had been involved with two underage girls in Manila, Philippines, during his relationship with his "fiancee" Beverly. Lewis also stated that Deverso admitted that the disks belonged to him but that he intended to shift the blame to his son, who was living with Deverso at the time of the search. Lewis testified that Deverso commented to him "that we all have a little pedophile in us." (R. Vol. 6, p. 429.)

Investigators also testified that they found Beverly's name on the back of one of the digital images and discovered romantic email chats between Deverso and Beverly. Under Deverso's account and in a folder titled Bev, investigators found pictures of Beverly, some of which were sexually explicit. Deverso allegedly took these pictures between October 15 and 17, 2004.

Dante Orate ("Orate"), Special Agent with DHS in Manila, testified that he personally met with Beverly after authorities helped him locate her. Beverly brought a birth certificate for Orate to review. Orate requested a copy of the birth certificate from the National Census and Statistics Office and had it certified at the U.S. Embassy. Orate stated that the copy of the birth certificate was exactly the same as the birth certificate Beverly showed him at their meeting. The date of birth on the copy of the birth certificate was November 10, 1986. The Government proffered the document as evidence that Beverly was a minor at the time Deverso had sex with her, and Deverso objected on the grounds that the document was an incomplete document because it did not have a signature under the heading "Certificate of Attendant at Birth." (R. Vol.6, p. 322.)

Beverly testified that her date of birth was November 10, 1986, and she was 17 when she met Deverso in October 2004. She stated that she had sex with Deverso when she was 17, and she told Deverso that she was 17. She also testified that Deverso sent her money for her 18th birthday.

After the Government concluded its case-in-chief, Deverso moved for judgments of acquittal on all counts and moved for dismissal of Count Two, arguing that it was unconstitutional facially and as-applied. The district court denied the motions.

Deverso took the stand and denied having sex with Beverly in October 2004. Deverso also stated that Beverly did not tell him that she was 17; instead, Beverly represented herself to be 18 or 19. Deverso testified that the hotel clerk did not inquire about Beverly's age when they registered, and no one questioned her age when they purchased alcoholic drinks. Deverso stated that he sent Beverly money for her 19th, not 18th, birthday. Deverso also denied telling his fellow inmate anything about his travels or having sex with minors. He commented that his testimony was the truth.

During the charge conference, Deverso objected to an instruction that "the defendant's awareness of the age of the minor is not an element of the offense," and that mistake of age is not a defense to Count Three. Instead, Deverso requested that the district court instruct the jury that mistake of age is, in fact, an affirmative defense to Count Three. The Government responded that the instruction was a correct statement of the law. The district court concluded that because knowledge of age is not an element of 18 U.S.C. § 2251, mistake of age is not a defense.

Deverso, 518 F.3d at 1253-54. Additional facts will be set forth below as needed to address specific issues.

## IV.

Most of petitioner's claims relate to asserted ineffective assistance of counsel. The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., fell below an objective standard of reasonableness under prevailing professional norms, and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  Generally, a court first determines whether counsel's performance fell below an objective standard of reasonableness, and then determines whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010).  A court need not address both prongs of the Strickland test, however, if petitioner makes an insufficient showing as to either prong. Dingle v. Sec'y for the Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

"As to counsel's performance, 'the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices.'"  Reed v. Sec'y, Fla. Dep't of Corr., 593 F.3d 1217, 1240 (11th Cir. 2010)(quoting Bobby v. Van Hook, 130 S. Ct. 13, 17 (2009)).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000)(quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90.  To be objectively unreasonable, the

performance must be such that no competent counsel would have taken the action.  Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue.  Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

A.  **Ground I: Failure to Move to Suppress Evidence**

In Ground I, petitioner argues that his attorney provided ineffective assistance by failing to file a motion to suppress evidence obtained through an illegally obtained search warrant and other violations of his Fourth Amendment rights.  Petitioner asserts that while he was in the Phillippines, federal agents received a tip from his ex-sister-in-law, who was acting in furtherance of a plot with petitioner's ex-wife to relieve petitioner of custody of his minor daughter by alleging that petitioner was traveling overseas for the purpose of engaging in sex with children.  Petitioner asserts that acting on this false tip, federal agent Keith Cramsey arranged an interview with petitioner's "estranged" wife.  According to petitioner, Agent Cramsey gained access to petitioner's house through lies, deceit, and threats to Mrs. Deverso, and took several items of evidence, notwithstanding the objections of Mrs. Deverso.  Based on this evidence, Agent Cramsey's experience, and the comments of both

-12-

petitioner's wife and ex-sister-in-law, Agent Cramsey obtained a search warrant for petitioner's house and requested the temporary detention of petitioner at Detroit (Michigan) Metropolitan Wayne County Airport, where petitioner had a stopover on his return from the Phillippines.  Pursuant to the search warrant, Agent Cramsey searched petitioner's home in Cape Coral, Lee County, Florida and obtained evidence against petitioner.  Petitioner asserts that his detention at the Detroit airport delayed his return until the search warrant on his house had been executed.  Petitioner argues that his attorney should have filed a motion to suppress evidence based upon the illegal search warrant, the illegal detention, and the other Fourth Amendment violations.  (Cv. Doc. #1, ¶12; Cv. Doc. #1-4, pp. 2-5.)

"To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006)(citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)).  The Court finds that petitioner has not satisfied the first two requirements.

A review of the record establishes that a competent attorney would have concluded that there was no legal basis to file a motion to suppress the items obtained by the agent from petitioner's wife or pursuant to the search warrant.  The interview with petitioner's wife was lawful, as was obtaining the information and evidence from her.  As the Court wrote on November 1, 2006, after the sentencing hearing: "The Court determines that the information in paragraphs 12 through 15 [of the Presentence Report] is factually accurate, and having heard the testimony at trial as well as the information at sentencing, concludes that the information from the officers as to the statements made by Mrs. Deverso is more reliable than the information from Mrs. Deverso at this time."  (Cr. Doc. #140, ¶3.)

The Eleventh Circuit Court of Appeals has already found that the search of Deverso's residence was "pursuant to a valid search warrant, . . ."  Deverso, 518 F.3d at 1253, and there is no reason to question that determination.  The credible testimony at trial provided no basis for a competent attorney to seek suppression of the evidence.

A person may be detained when entering the United States above and beyond the routine customs search and inspection upon reasonable suspicion, United States v. Montoya de Hernandez, 473 U.S. 531, 541 (1985), a standard which was amply satisfied in this case.  Additionally, petitioner has not identified any evidence seized from him in Detroit which was admitted at trial but should

have been suppressed.   Further, petitioner had no right to be present at the house during the execution of the search warrant.

Having presided over the trial and reviewed the full record, the Court finds that a motion to suppress would have been without legal merit.   The Court finds that petitioner's counsel did not provide ineffective assistance by not filing a motion to suppress the evidence.

## B.   Ground II: Mistake of Fact Defense

Petitioner asserts in Ground II that his attorney provided ineffective assistance by failing to investigate and assert the affirmative defense of mistake of fact, denying him of his Fifth Amendment right to an affirmative defense.   Petitioner further argues that he had a right to a jury instruction as to his theory of defense, and that his attorney should have argued a mistake of fact defense instead of a mistake of age defense.   (Cv. Doc. #1, ¶13; Cv. Doc. #1-5, pp. 1-3.)

The Court finds that there was no ineffective assistance of counsel based upon these asserted grounds.   The only "mistake of fact" which was material to this case was the age of Beverly. Defense counsel did indeed raise that issue and sought a jury instruction, but his requests were denied and the denial upheld on appeal.   As the Eleventh Circuit stated,

> Deverso requested that the district court instruct the
> jury that mistake of age is, in fact, an affirmative
> defense to Count Three. The Government responded that the
> instruction [that "the defendant's awareness of the age

> of the minor is not an element of the offense,"] was a
> correct statement of the law. The district court
> concluded that because knowledge of age is not an element
> of 18 U.S.C. § 2251, mistake of age is not a defense."

Deverso, 518 F.3d at 1254.  A defendant only has a right to a jury
instruction concerning a theory of defense when the proposed
instruction presents a valid defense and some evidence has been
adduced at trial relevant to the defense.  United States v. Ruiz,
59 F.3d 1151, 1154 (11th Cir. 1995).  As the Eleventh Circuit held,
mistake of fact as to age was not a valid defense in this case.
Deverso, 518 F.3d at 1257.  There were no other relevant mistakes
of fact which would constitute a valid affirmative defense, and
counsel did not provide ineffective assistance of counsel in
failing to assert such defenses or request additional jury
instructions.

## C.  Ground III: Failure to Seek Dismissal of Original Indictment

In Ground III, petitioner asserts that his attorney provided
ineffective assistance by failing to investigate, object to, or
file a motion to dismiss the original Indictment filed on April 13,
2005.  Petitioner asserts that at the time the first indictment was
filed, the Eleventh Circuit had recently found 18 U.S.C.
§ 2252A(a)(5)(B) and § 2251(a) unconstitutional as applied.  United
States v. Maxwell, 386 F.3d 1042 (11th Cir. 2004); United States v.
Smith, 402 F.3d 1303 (11th Cir. 2005).  Although petitioner
concedes he was charged under a different statutory provision, he
argues that the same Commerce Clause rationale would have applied

to his Indictment, and therefore counsel should have filed a motion to dismiss the Indictment.  (Cv. Doc. #1, p. 8; Cv. Doc. #1-6, pp. 2-3.)

Petitioner's argument is without merit for several reasons. First, petitioner was not convicted of the charge in the original Indictment, but rather of the charges filed in a Second Superceding Indictment (Cr. Doc. #42) on August 31, 2005.  Second, as petitioner concedes, neither Maxwell nor Smith addressed the statutory provision under which petitioner was charged in the original Indictment.  Finally, the decisions in Maxwell and Smith were both incorrect in light of Gonzales v. Raich, 545 U.S. 1 (2005), decided on June 6, 2005.  Both decisions were vacated by the United States Supreme Court, United States v. Maxwell, 546 U.S. 801 (2005); United States v. Smith, 545 U.S. 1125 (2005), and on remand, the Eleventh Circuit found the statutes to be constitutional.  United States v. Smith, 459 F.3d 1276, 1284-86 (11th Cir. 2006); United States v. Maxwell, 446 F.3d 1210, 1218 (11th Cir. 2006).

An attorney is not ineffective for failing to file a meritless motion.  Accordingly, the Court finds that Ground III is without merit, and that counsel did not provide ineffective assistance by not filing a motion to dismiss the original Indictment.

D.   **Ground IV: Failure to Seek Dismissal of Second Superceding Indictment**

In Ground IV, petitioner asserts that his attorney provided ineffective assistance of counsel by failing to file a motion to dismiss the Second Superceding Indictment. Petitioner asserts that Count III was unconstitutional under the Commerce Clause as applied to him, and that Count II was duplicative of Count III. (Cv. Doc. #1, pp. 9-10; Cv. Doc. #1-7, p. 2-10).

Count III alleged that defendant used a minor to engage in sexually explicit conduct outside of the United States [in the Philippines] for the purpose of producing a visual depiction of such conduct, and transported that visual depiction into the United States, in violation of 18 U.S.C. § 2251(c)(2)(B). (Cr. Doc. #42.) It is clear that the application of § 2251(c)(2)(B) to petitioner's travel to and from the Philippines was well within Congress's constitutional power under the Commerce Clause. See Smith, 459 F.3d at 1285. Petitioner's further argument that the government failed to prove he violated this statute because he lacked a plan, did not act with purpose or intentionally, and lacked knowledge of the victim's age, are issues which address the sufficiency of the evidence and have been resolved against petitioner by the jury, this Court, and the Eleventh Circuit. Such arguments do not affect the constitutionality of the statute as applied to petitioner. The Court finds there was no ineffective assistance of counsel in

failing to challenge the constitutionality of the statute charged in Count III as applied to petitioner's conduct.

Petitioner also argues that his attorney failed to provide effective assistance by failing to seek dismissal of Count II as being duplicative of Count III.  Petitioner argues that both counts, and their respective statutes, punish the same act of transporting sexually explicit depictions of a minor into the United States, and that Count II is a lesser included offense which would have been dismissed on motion by defense counsel.  (Cv. Doc. #1-7, pp. 9-10).

Petitioner's claim that Count II is duplicative of Count III is a legal claim of multiplicity.  Multiplicity arises when a single offense is charged in more than one count.  United States v. Eaves, 877 F.2d 943, 947 (11th Cir. 1989).  Generally, the test for determining whether an indictment is multiplicious is that set forth by the Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932).  "Whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304.

Similarly, the applicable legal principles in the area of lesser included offenses are well settled.

> As a general proposition, when a defendant has violated two different criminal statutes, the Double Jeopardy Clause is implicated when both statutes prohibit the same act or transaction or when one act is a lesser included offense of the other. [ ] Congress, of course, has the power to authorize multiple punishments arising out of a single act or transaction. [ ] The constitutional guarantee against double jeopardy merely assures that the

court does not exceed its legislative authorization by imposing multiple punishments for the same offense. [ ] If it is not clear, though, that the legislature intended multiple punishments for the same conduct, a presumption arises that a conviction under multiple statutes for the same offense is contrary to legislative intent. [ ] To sum up, where two statutory provisions proscribe the same offense and there is no clear indication that the legislature intended multiple punishments for the offense, the Double Jeopardy Clause's prohibition against multiple punishments protects a defendant from being convicted under both provisions.

The Supreme Court has penned a black-letter rule for use in determining when dual statutory provisions prohibit the same offense: where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. [ ] Our analysis focuses on the proof necessary to establish the statutory elements of each offense, not the actual evidence presented at trial.

United States v. Bobb, 577 F.3d 1366, 1371-72 (11th Cir. 2009)(internal citations and quotation marks omitted).  "[T]he first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense. [ ]  The second step is to determine whether each provision requires proof of a fact which the other does not." United States v. Harper, No. 09-16077, 2010 WL 3860730 *2 (11th Cir. Oct. 5, 2010)(citations omitted).

The Court finds that there is no binding authority supporting the propositions that the offenses in Count II and Count III were either multiplicious, violated double jeopardy principles, or was a lesser included offense.  Accordingly, a reasonably competent attorney would not be required to raise these issues, and the Court

finds no ineffective assistance in counsel as to these matters.  In any event, identical concurrent sentences were imposed on Count II and Count III and therefore petitioner can demonstrate no prejudice.

## E.   Ground VI: Change of Venue

In Ground VI, petitioner argues that venue was not proper in the Fort Myers Division of the Middle District of Florida, and that his attorney provided ineffective assistance by failing to file a motion to change venue to Detroit, Michigan.  Petitioner argues that the violation of § 2251(c)(2)(B) occurred when he re-entered the United States, and that he re-entered the United States in Detroit, Michigan.  Additionally, petitioner asserts that counsel should have filed a motion to change venue because of the "immense negative publicity" given to the case.  (Cv. Doc. #1, p. 11; Cv. Doc. #1-9, pp. 2-4.)

Article III of the U.S. Constitution provides that criminal trials "shall be held in the State where the said Crimes shall have been committed. . . ."  U.S. Const. art. III, § 2, cl. 3.  The Sixth Amendment provides that an accused has the right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed. . . ."  U.S. Const. amend. VI.  The Federal Rules of Criminal Procedure preserve this constitutional right by providing that "(e)xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in

which the offense was committed." Fed. R. Crim. P. 18. Where an offense "was committed" "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) (quoting United States v. Cabrales, 524 U.S. 1, 6-7 (1998)). Where an offense is a continuing offense, it may be prosecuted in any district in which the offense was begun, continued, or completed. 18 U.S.C. § 3237(a).

In Count One, petitioner was charged with (and convicted of) violating 18 U.S.C. § 2252(a)(4)(B), which proscribes the possession of materials involving a depiction of a minor engaged in sexually explicit activity. Accordingly, Count One was committed in the location where petitioner possessed the subject materials. That location was at petitioner's residence in Cape Coral, Lee County, Florida, where federal agents discovered and seized materials involving the depiction of a minor engaged in sexually explicit activity. Lee County, Florida is in the Middle District of Florida, 28 U.S.C. § 89(b), and within the Fort Myers Division. M.D. Fla. LR 1.02(b)(5). Therefore venue for the trial of Count One was proper in the Fort Myers Division of the Middle District of Florida.

In Count Two, petitioner was charged with (and convicted of) violating 18 U.S.C. § 2252(a)(1), which proscribes the transportation of materials involving a depiction of a minor

engaged in sexually explicit activity. Count Two is a continuing offense which may be prosecuted in any district satisfying 18 U.S.C. § 3237(a), which provides:

> (a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a). Count Two charged, and the evidence established, that this offense was committed in Cape Coral, Florida. Therefore, this Court was a proper forum in which to try petitioner on Count Two.

Finally, in Count Three, petitioner was charged with (and convicted of) violating 18 U.S.C. § 2251(c)(2)(B), which proscribes using a minor to engage in sexually explicit conduct outside of the United States for the purpose of producing a visual depiction of such conduct and transporting the visual depiction into the United States. Petitioner used a minor to engage in sexually explicit conduct in the Phillipines, which is, outside of the United States. The offense in Count Three involves the importation of an object into the United States, and "[a]ny offense involving . . .

the importation of an object or person into the United States is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such . . . imported object or person moves." 18 U.S.C. § 3237(a). Count III charged, and the evidence established, that this offense was committed in the Middle District of Florida and in the Philippines. Therefore, Count Three may be prosecuted in this Court. See United States v. Kapordelis, 569 F.3d 1291, 1307-08 (11th Cir. 2009)(holding venue in the Northern District of Georgia appropriate where defendant used minors to engage in sexually explicit conduct in Greece and South Carolina, produced visual depictions of such conduct, and transported such visual depictions into Georgia in violation of 18 U.S.C. § 2251(a)); see also United States v. Engle, 677 F. Supp. 2d 879, 881 (E.D. Va. 2009)(holding Eastern District of Virginia appropriate where defendant was accused of transporting a visual depiction of sexual conduct produced in violation of 18 U.S.C. § 2251(a) into the Eastern District of Virginia).

Venue in this Court was proper as to all three counts. Additionally, petitioner resided in this division of the Fort Myers Division of the Middle District of Florida. The Court finds that the petitioner's counsel did not provide ineffective assistance by failing to move for a change in venue.

Petitioner also argues that counsel provided ineffective assistance of counsel by failing to move for a change of venue

-24-

based upon pretrial publicity.   (Cv. Doc. #1-9, p. 4.)   The
standard for a change of venue is clear:

> The trial court may be unable to seat an impartial jury
> because of prejudicial pretrial publicity or an inflamed
> community atmosphere. In such a case, due process
> requires the trial court to grant defendant's motion for
> a change of venue. This does not mean, however, that a
> defendant is entitled to a change of venue whenever
> potential jurors have been exposed to the facts of the
> case.
>
> It is not required that jurors be totally ignorant of the
> facts and issues involved. In these days of swift,
> widespread and diverse methods of communication, an
> important case can be expected to arouse the interest of
> the public in the vicinity, and scarcely any of those
> best qualified to serve as jurors will not have formed
> some impression or opinion as to the merits of the case.
> This is particularly true in criminal cases. To hold that
> the mere existence of any preconceived notion as to the
> guilt or innocence of an accused, without more, is
> sufficient to rebut the presumption of a prospective
> juror's impartiality would be to establish an impossible
> standard. It is sufficient if the juror can lay aside his
> impression or opinion and render a verdict based on the
> evidence presented in court.
>
> A defendant is entitled to a change of venue if he can
> demonstrate either "actual prejudice" or "presumed
> prejudice." To find the existence of actual prejudice,
> two basic prerequisites must be satisfied. First, it must
> be shown that one or more jurors who decided the case
> entertained an opinion, before hearing the evidence
> adduced at trial, that the defendant was guilty. Second,
> these jurors, it must be determined, could not have laid
> aside these preformed opinions and rendered a verdict
> based on the evidence presented in court. If a defendant
> cannot show actual prejudice, then he must meet the
> demanding presumed prejudice standard.
>
> Prejudice is presumed from pretrial publicity when
> pretrial publicity is sufficiently prejudicial and
> inflammatory and the prejudicial pretrial publicity
> saturated the community where the trials were held. The
> presumed prejudice principle is rarely applicable, and is
> reserved for an extreme situation. Where a petitioner

adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from the community, jury prejudice is presumed and there is no further duty to establish bias.

Gaskin v. Sec'y, Dep't Of Corr., 494 F.3d 997, 1004-05 (11th Cir. 2007)(quoting Meeks v. Moore, 216 F.3d 951, 960-61 (11th Cir. 2000)).  Defense counsel discussed pretrial publicity in connection with the Court's voir dire examination of the potential jurors. (Cr. Doc. #161, pp. 11.)  A jury was selected without difficulty, and nothing in the record establishes that counsel could have satisfied the standard for a change of venue.  There was no ineffective assistance of counsel because a motion for change of venue would have been without merit.

**F.  Ground VI: Wrongful Jurisdiction**

Also in Ground VI, petitioner asserts that his attorney was ineffective because he failed to file a motion to dismiss the indictment based upon wrongful jurisdiction.  Petitioner argues that there was no jurisdiction in a court of the United States for conduct committed outside the United States unless the extraterritorial conduct produced effects within the United States. Petitioner argues that he was lured to the Philippines by misrepresentations, deceit, and fraud, and that his alleged conduct under § 2251(c)(2)(B) "did nothing to any U.S. citizen, in any U.S. Territory."  (Cv. Doc. #1, p. 11; Cv. Doc. #1-9, pp. 5-8.)  This

claim can relate only to Count III, the only count which related to events in the Philippines.

Section 2251, relating to the sexual exploitation of children, provides in pertinent part:

> (c)(1) Any person who, in a circumstance described in paragraph (2), employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e).
>
> (2) The circumstance referred to in paragraph (1) is that– . . .
>
> (B) the person transports such visual depiction to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail.

18 U.S.C. § 2251(c)(2)(B).  Count III of the Second Superceding Indictment alleged that:

> Between October 15, 2004, through on or about October 17, 2004, in Lee County, in the Middle District of Florida, and the Philippines, the defendant DONALD J. DEVERSO did knowingly employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct outside of the United States for the purpose of producing a visual depiction of such conduct, and did transport such visual depiction to the United States by any means, including by computer, and whiCh visual depiction had actually been transported in interstate and foreign commerce and mail.  In violation of Title 18, United States Code, Section 2251(c)(2)(B) and 2251(e).

(Cr. Doc. #42.)

Petitioner essentially argues that Congress does not have the power to authorize prosecution for prohibited acts by an American

national that occurred in a foreign country, and that Court III constitutes an improper extraterritorial application of the permissible statutes regarding prosecution of the sexual exploitation of children.

> It has long been established that Congress has the power to regulate the extraterritorial acts of U.S. citizens. [ ] As we have explained, however, whether Congress has chosen to exercise that authority . . . is an issue of statutory construction. It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. [ ] The presumption against extraterritoriality can be overcome only by clear expression of Congress' intention to extend the reach of the relevant Act beyond those places where the United States has sovereignty or has some measure of legislative control. [ ] Such an intention of course may appear on the face of the statute, but it may also be inferred from . . . the nature of the harm the statute is designed to prevent, from the self-evident international focus of the statute, and from the fact that limiting [the statute's] prohibitions to acts occurring within the United States would undermine the statute's effectiveness.

United States v. Belfast, 611 F.3d 783, 810-11 (11th Cir. 2010)(internal quotation marks and citations omitted.)  Congress clearly intended to reach extraterritorial acts, since the language of the statute requires such extraterritorial conduct as a component of the offense.  Because Congress was authorized to punish the conduct, and the language of the Second Superceding Indictment stated an offense under the statute, the Court finds that petitioner's attorney did not provide ineffective assistance by failing to move to dismiss the indictment for lack of jurisdiction.

**G.  Ground VII: Representation By Wrong Attorney**

In Ground VII, petitioner alleges that he retained attorney Michael H. Blacker but his trial attorney was John E. Bergendahl, whom he had not retained and did not want as his trial counsel. Petitioner asserts generally that Mr. Bergendahl was not prepared and performed poorly, and the Court should have allowed Mr. Bergendahl to withdraw when he requested to do so.  Petitioner also asserts that his new retained counsel for appeal, Michael R.N. McDonnell, failed to keep him informed of the issues and facts he was raising on appeal before filing his appellate brief, and misled him as to filing a petition for writ of certiorari with the United States Supreme Court.  (Cv. Doc. 1-10, pp. 2-17).

The second attorney retained to represent petitioner at trial, Peter Ringsmuth (Mr. Ringsmuth), had previously been consulted by a jail inmate who ultimately testified against petitioner.  On October 31, 2006, Mr. Ringsmuth filed a Motion to Determine Potential Attorney Conflict.  (Cr. Doc. #62.)  In due course, the magistrate judge scheduled a Garcia[2] hearing (Cr. Doc. #68), heard testimony from both the inmate (Michael Wayne Lewis (Lewis)) and petitioner, as well as input from the attorneys, and for the reasons set forth in a written Order (Cr. Doc. #72) filed November 22, 2005, allowed Mr. Ringsmuth to withdraw as counsel.

---

[2]United States v. Garcia, 517 F.2d 272 (5th Cir.1975), abrogated in part by Flanagan v. United States, 465 U.S. 259, 263 (1984).

At a December 7, 2005 status conference, petitioner stated he had been working on retaining counsel but had not been able to do so.   Petitioner waived his speedy trial right and requested a continuance until the January 2006 trial term.   The magistrate judge found that the ends of justice served by granting such a continuance outweighed the best interest of the public and defendant in a speedy trial, granted the motion, and excluded the time from the speedy trial calculation.   (Cr. Doc. #74.)

On December 12, 2005, the undersigned held a status conference regarding counsel with petitioner.   Mr. Ringsmuth and attorney Lee Hollander were present, and Mr. Hollander stated he was attempting to make arrangements for representation of petitioner.   The case was continued until December 16, 2005, to see if those arrangements would take place.   (Cr. Doc. #75.)   At the December 16, 2005 status conference, Mr. Hollander stated he had been told that petitioner's family had retained an attorney from Miami who would file a notice of appearance.   The Court kept the case on the January 2006 trial term.   (Cr. Doc. #76.)

At a January 4, 2006, status hearing, petitioner advised the undersigned that Michael Blacker of Miami was representing him. The Court's staff was informed that a notice of appearance would be filed that day or the next, and the Court scheduled another status conference regarding counsel.   (Cr. Docs. #78, 79.)   At a January 17, 2006 status conference, petitioner advised that his wife had

made arrangements with an attorney, and the Court took a recess so the attorney could call and confirm his representation. Mr. Blacker's office did not file a notice of appearance, and the case was continued until January 20, 2006. (Cr. Doc. #82.) On January 19, 2006, Mr. John E. Bergendahl filed a Notice of Appearance. (Cr. Doc. #84.) Mr. Bergendahl filed a Motion for Continuance of Trial, (Cr. Doc. #86), due to the voluminous discovery and to adequately prepare for trial. The undersigned granted the motion, and continued the trial until the April 2006 trial term. (Cr. Doc. #87.) One additional continuance was granted at Mr. Bergendahl's request, (Cr. Doc. #91), and the case then proceeded to trial. No appearance was ever filed by Mr. Blacker, and Mr. Bergendahl represented petitioner for the duration of the case through sentencing. The record reflects that Mr. Bergendahl was prepared for both trial and sentencing, and represented petitioner effectively. There was neither error in allowing Mr. Bergendahl to represent petitioner nor ineffective assistance of counsel provided by Mr. Bergendahl.

As to Mr. McDonnell, petitioner had no constitutional right to appeal his case to the United States Supreme Court, and therefore had no constitutional right to counsel, or effective counsel, to do so. Golston v. Attorney Gen. of Ala., 947 F.2d 908, 911 n.3 (11th Cir. 1991)("We sympathize with any defendant who might be misled by counsel into foregoing potential avenues of relief. Nevertheless,

a defendant who has no constitutional right to counsel cannot be deprived of the effective assistance of counsel when his lawyer wrongly advises him.   See Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S. Ct. 1300, 1301-02, 71 L. Ed. 2d 475 (1982) (per curiam) (where respondent had no constitutional right to counsel, he could not be deprived of effective assistance when his retained counsel failed to file a timely application for writ of certiorari).")   Accordingly, petitioner's claim is without merit.

## H.   Ground VIII:   Mens Rea and Penalties

In Ground VIII, petitioner argues that his counsel provided ineffective assistance by failing to request an instruction to the jury as to the *mens rea* required for conviction under 18 U.S.C. § 2252(a)(4)(B), (a)(1), and 18 U.S.C. § 2251(c)(2)(B).   Petitioner further asserts that the jury should have been made aware of the penalties for the offenses.   Petitioner also repeats his arguments that the evidence was insufficient to establish he acted with the required *mens rea*.   (Cv. Doc. #1, p. 13; Cv. Doc. #1-11, pp. 2-6.) Petitioner also relies upon Tilton v. Playboy Entm't Group, Inc., 554 F.3d 1371 (11th Cir. 2009).   (Cv. Doc. #21.)

Contrary to petitioner's argument, the record establishes that the jury was properly instructed as to the *mens rea* requirement as to all charges.   The instructions regarding Count One, in which petitioner was charged with violating 18 U.S.C. § 2252(a)(4)(B), were replete with *mens rea* requirements:

> The defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: First, that the Defendant **knowingly** possessed matters which the Defendant **knew** contained a visual depiction of a minor engaged in sexually explicit conduct; Second, that the Defendant **knew** the visual depiction contained in the matters was of a minor . . . Third, that the Defendant **knew** that production of such a visual depiction involved use of a minor. . . ."

(Cr. Doc. #165, pp. 706-07)(emphasis added).   Similarly, the jury

instructions as to Count Two, in which petitioner was charged with

violating 18 U.S.C. § 2252(a)(1), stated:

> The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:  First, that the Defendant **knowingly** transported or shipped a visual depiction . . . Fourth, that the Defendant **knew** that at least one of the performers in such visual depiction was a minor and **knew** that the visual depiction was of such minor engaged in sexually explicit conduct.

(Cr. Doc. #165, pp. 709-10)(emphasis added).   Finally, the jury

instructions regarding Count Three, in which petitioner was charged

with violating 18 U.S.C. § 2251(c)(2)(B), stated:

> The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:  First, that the Defendant **knowingly** employed, used, persuaded, induced, enticed, or coerced a minor to take part in sexually explicit conduct for the **purpose** of producing a visual depiction of such conduct . . . Fourth, that the Defendant **knowingly** transported such visual depiction to the United States, its territories or possessions, by any means, including by computer or mail.

(Cr. Doc. #165, pp. 711-12)(emphasis added).   The jury was told

that "knowingly" "means that the act was done voluntarily, and

intentionally, and not because of mistake or accident." (Cr. Doc.

#165, p. 713.)

While petitioner continues to complain about the lack of a jury instruction regarding his knowledge of Beverly's age, that issue was resolved against his position on direct appeal. Deverso, 518 F.3d at 1257-58.   Additionally, there was no ineffective assistance of counsel because his attorney did request the type of instruction petitioner seeks, but his request was denied.   During the charge conference, petitioner's counsel objected to an instruction regarding Count Three "that the defendant's awareness of the age of the minor is not an element of the offense."   (Cr. Doc. #164 at 471.)   Counsel for petitioner went on to request a "reasonable mistake of age defense."   (Id. at 472.)   Therefore, petitioner's counsel did not provide ineffective assistance.

Additionally, it is clear that a jury is not to be instructed as to the penalties of the offense.   The penalties have no relevance to any of the issues raised, as the jury was instructed, (Cr. Doc. #165, p. 714), in accordance with Eleventh Circuit Pattern Criminal Jury Instruction, Basic 10.2 (2003).   An attorney who fails to request such an improper instruction does not provide ineffective assistance.

The Court finds that petitioner's counsel did not provide ineffective assistance with regard to the instructions as to mens rea or the offense penalties.   Nothing in Tilton, a civil action, changes the law or indicates counsel provided ineffective assistance.

-34-

**I.  Ground IX: Foreign Document**

In Ground IX, petitioner claims that his counsel was ineffective for failing to argue against the admissibility of Beverly's foreign birth certificate at trial.  Petitioner asserts the document should not have been admitted into evidence at trial, and counsel should have filed a motion to investigate and exclude the document.  (Cv. Doc. #1, p. 14; Cv. Doc. #1-12, pp. 2-7.)

The record establishes that counsel did, in fact, object to the admission of the birth certificate on the ground that it was an "incomplete document." (Cr. Doc. #163, p. 323.)  The objection was overruled. (Id.)  Petitioner then argued against the admissibility of the birth certificate for different reasons in his appeal to the Eleventh Circuit, but those arguments were rejected as well.  See Deverso, 518 F.3d at 1254-56.  It is these same arguments that petitioner now claims his counsel should have made in the trial court.  However, "[o]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255."  United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000)(quoting United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977)).  Additionally, an attorney does not provide ineffective assistance of counsel by failing to argue issues which are without merit.  The Court concludes that petitioner did not receive ineffective assistance of counsel in connection with the admissibility of the foreign document.

In his first Supplement (Cv. Doc. #6), petitioner asserts that the admission of the birth certificate violated his Sixth Amendment right under the intervening decision in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). In Melendez-Diaz the Supreme Court held that affidavits setting forth the results of forensic analysis which showed that sized material was cocaine were testimonial under Crawford v. Washington, 541 U.S. 36 (2004), and therefore the analysts were required to testify. The Supreme Court concluded that the certificates were testimonial statements because they were made under oath for the purpose of establishing some fact and "under circumstances which would lead an objective witness reasonably to believe that [they] would be available for use at a later trial." Id. at 52 (quotation omitted). The birth certificate was not testimonial within the meaning of Crawford or Melendez-Diaz, and the subject of the birth certificate (Beverly) was testified to in person at the trial and was subject to cross examination. Accordingly, there was neither substantive error in the admission of the birth certificate nor ineffective assistance of counsel.

**J.  Ground X: Sentencing Proceedings**

In Ground X, petitioner argues that his attorney provided ineffective assistance at sentencing because he had moved to withdraw and was not prepared. Most of this argument focuses on petitioner's argument that his sentence was unreasonable, and the

Court failed to properly consider mitigating factors.  (Cv. Doc. #1, p. 15; Cv. Doc. #1-13, pp. 2-16.)

The record reflects petitioner received effective assistance of counsel at the sentencing proceedings.  His attorney filed written objections to the Presentence Report prior to the hearing (Cr. Doc. #129), and argued the objections extensively.  (Cr. Doc. #139.)  The Court filed a six-page Notice (Cr. Doc. #140) with regard to its sentencing decisions, which included sustaining of defense counsel's objections.  (Cr. Doc. #140, ¶¶ 9, 11.)  The Court considered the mitigating factors argued by petitioner, and recognized its authority to impose a sentence below the Sentencing Guideline range, but found that none of the factors justified such a sentence.  (Cr. Doc. #140, ¶¶ 14, 17.)

## K.  Ground XI:  Speedy Trial

In his Supplement to the § 2255 motion, petitioner argues that he received ineffective assistance of counsel because his attorney failed to seek to dismiss the indictment or violation of the Speedy Trial Act of 1975.  Petitioner states that an indictment was returned in open court and a warrant for the arrest of petitioner was issued on April 13, 2005.  The next day, April 14, 2005, petitioner was arrested, and he was held until the start of his trial on May 15, 2006, without bond.  Petitioner asserts that the 70 day time limit in 18 U.S.C. § 3161 was violated, and his attorney should have moved to dismiss both the First Superceding

-37-

Indictment and the Second Superceding Indictment.  (Cv. Doc. #7, pp. 1-4.)

At the time, 18 U.S.C. § 3161 provided that, "In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days. . . ."  Certain time periods are excluded from the seventy day period, including any period of delay resulting from a continuance granted at the request of the defendant or his counsel "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Id.

As discussed above, there were several changes of counsel prior to the trial.  Mr. Ringsmuth and Mr. Bergendahl each requested multiple continuances in order to prepare the case, and each time the Court found good cause and that the ends of justice served by granting a continuance outweighed the best interest of the public and defendant in a speedy trial.  The time was therefore excludable under the Speedy Trial Act, and a competent attorney would not have filed a motion to dismiss.  There was no ineffective assistance of counsel based upon counsel's failure to file such a motion.

**L.  Failure to Investigate Witness Benefits**

Petitioner argues that his attorney was ineffective by failing "to Investigate and Object to the violation of 18 U.S.C. § 201(c)(2) & (3), to protect defendants Sixth Amendment Rights . . ." (Cv. Doc. #1-8.)

The Eleventh Circuit has determined that cooperation provisions of plea agreements do not violate 18 U.S.C. § 201(c)(2). United States v. Lowery, 166 F.3d 1119, 1124 (11th Cir. 1999). "Testimony derived through plea agreements is common in trials and does not violate 18 U.S.C. § 201(c)(2), the statute that prohibits bribing witnesses." United States v. Thayer, 204 F.3d 1352, 1357 (11th Cir. 2000). Defense counsel knew Lewis was testifying with a plea agreement, and elicited that information before the jury. No ineffective assistance of counsel is established in failing to assert a claim under § 201 because such a position was without merit and an attorney need not advance a meritless position on behalf of his client.

## V.

Petitioner raises several substantive claims of prosecutorial misconduct in addition to the ineffective assistance of counsel claims. (Cv. Doc. #1, p. 10; Cv. Doc. #1-8, pp. 2-9.)

"A criminal defendant who fails to object at trial, or to raise an available ground of error on direct appeal, is procedurally barred from raising the claim in a § 2255 motion,

absent a showing of cause and prejudice or a fundamental miscarriage of justice." <u>DiPietro v. United States</u>, 251 F. App'x 606, 607 (11th Cir. 2007)(citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). "In order to establish prejudice, a defendant must show that 'errors at trial worked to his **actual** and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" <u>Id.</u> at 608 (quoting <u>Cross v. United States</u>, 893 F.2d 1287, 1292 (11th Cir. 1990)(emphasis in original)). However, "[a] defendant may avoid the need to show cause and prejudice on a procedurally defaulted claim by raising a substantive issue of ineffective assistance of counsel for failure to assert the claim." <u>Id.</u> (citing <u>Eagle v. Linahan</u>, 279 F.3d 926, 938 (11th Cir. 2001)).

While these claims have all been procedurally defaulted, the Court will address their merits in the alternative. "In order for a claim to be cognizable under 28 U.S.C. § 2255, it generally must be based on a constitutional right." <u>Id.</u> at 608 (citing <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988)). "In some cases, prosecutorial misconduct may be so great as to constitute a violation of the Due Process Clause of the Constitution." <u>Id.</u> (citing <u>Parker v. Head</u>, 244 F.3d 831, 838 (11th Cir. 2001)).

## A.  Prejudicial Pretrial Press Release

Petitioner alleges misconduct on the part of the prosecutor for releasing prejudicial statements to the press before the trial

began.   Petitioner has procedurally defaulted this claim of prosecutorial misconduct, has not shown cause and prejudice, and has not asserted ineffective assistance of counsel for failing to assert this claim.   Accordingly, the claim is procedurally defaulted.   Additionally, petitioner has failed to establish any prosecutorial misconduct in the issuance of a press release or resulting prejudice.   Therefore, even if the Court considers the claim, it is without merit.

**B.   Statements Made by Petitioner to Fellow Inmate**

Petitioner asserts that his constitutional rights were violated by the acquisition and introduction at trial of statements petitioner made to a fellow inmate, Michael Lewis.  Petitioner has procedurally defaulted this claim of prosecutorial misconduct, has not shown cause and prejudice, and  has not asserted ineffective assistance of counsel for failing to assert this claim. Accordingly, the claim is procedurally defaulted.

Alternatively,  the  Court  finds  that  petitioner's constitutional rights were not violated.  Under Massiah v. United States, 377 U.S. 201 (1964), a violation occurs when the government uses a paid informant to pose as a cell mate and obtain information from defendant after indictment when the defendant is unaware that the cell mate was an informant.  United States v. Henry, 447 U.S. 264, 270 (1980).  The evidence in this case fails to support such a violation.  According to Lewis's testimony, he was incarcerated,

had signed a Plea Agreement, and was approached by petitioner who made various statements to him.  The government did not prompt or request Lewis to engage petitioner in conversation.  None of petitioner's rights were violated because there was no prosecutorial involvement, much less misconduct, in soliciting the conversations.

## C.  Prosecution Coerced Witnesses Into Testifying

Petitioner alleges misconduct on the part of the prosecutor in coercing two witnesses, including Beverly, into testifying by threatening federal investigation or prosecution of the witnesses themselves.  The record does not support this argument.

## D.  Prosecution's Use of Inflammatory Remarks

Petitioner argues that several of the prosecutor's statements were improper and contributed to a miscarriage of justice.  The substantive standard was recently summarized by the Eleventh Circuit:

> Prosecutorial misconduct requires a new trial only if we find the remarks (1) were improper and (2) prejudiced the defendant['s] substantive rights. [ ] We must examine the statements in the context of the trial as a whole and assess their probable impact on the jury. [ ] A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different. [ ] Thus, even when error occurs, the defendant's substantial rights are not affected if the evidence sufficiently established his guilt. [ ] Nevertheless, the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial might be necessary.

<u>United States v. Frank</u>, 599 F.3d 1221, 1237-38 (11th Cir. 2010)(internal citations and quotation marks omitted.)

This Court finds no remarks made by the prosecutor which satisfy this standard.  The prosecution is entitled to offer its characterization of the testimony and evidence within reason. Federal prosecutors are not required to present their case in a fashion most favorable to the defendant, and there is no evidence in the record which suggests that the remarks made by the prosecution were calculated to impermissibly inflame the passions and prejudices of the jury.  Additionally, there is no reasonable probability that but for the allegedly improper remarks, the outcome of the trial would have been different.

Petitioner further argues that the prosecution acted improperly in: (1) making it seem as though petitioner kept certain "critical evidence" hidden, notwithstanding that such was accessible by others; (2) "showing only one line sentences of hours of talk" between the petitioner and the victim, thereby taking such sentences out of context; and (3) stating that "'he (the defendant) knowingly produced the visual depictions of a minor outside the U.S.', instead of truthfully stating he (the defendant) knowingly produced the visual depictions of a minor outside the U.S. <u>FOR THE PURPOSE OF</u>."  (Cv. Doc. #1-8 at 7)(emphasis in original).  Having reviewed the record, the Court finds no prosecutorial misconduct as

to any of these claims.  Accordingly, the Court rejects this claim by petitioner of prosecutorial misconduct.

**E.  Prosecution's <u>Brady</u> Violation**

Finally, petitioner alleges misconduct on the part of the prosecutor for not informing petitioner of the reason why the government referred to petitioner's case as a "test case."

"[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." <u>Hammond v. Hall</u>, 586 F.3d 1289, 1305 (11th Cir. 2009)(quoting <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)).  "A <u>Brady</u> violation has three components: '[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.'"  <u>Id.</u> (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)).

The government was under no obligation to disclose why it characterized petitioner's case as a "test case."  The government's reasoning, even if correct, is not "evidence" at all and is certainly not dispositive.  As the Eleventh Circuit noted in its opinion on direct appeal, two of the issues raised by petitioner's attorney were issues of first impression.  <u>Deverso</u>, 518 F.3d at 1252.  Therefore, the Court rejects this final claim by petitioner of prosecutorial misconduct.

**VI.**

In his Motion for Discovery and Inspection, petitioner seeks discovery of 21 categories of documents from the government. The requested discovery is typical of items which a defendant may seek from the government pretrial pursuant to Fed. R. Crim. P. 16. (Cv. Doc. #13.)

The Court may, "for good cause," authorize discovery by a petitioner in a § 2255 proceeding. Rules Governing Section 2255 Proceedings for the United States District Courts 6(a). As in a § 2254 proceeding, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." Isaacs v. Head, 300 F.3d 1232, 1248 (11th Cir. 2002)(quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)). In interpreting the "good cause" portions of this rule, Bracy noted that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Id. (citing Bracy, 520 U.S. at 908-909). Having reviewed all the issues raised by petitioner, the Court concludes that good cause does not exist for the requested discovery. Therefore the Motion for Discovery and Inspection (Cv. Doc. #13) is denied.

**VII.**

Petitioner also has filed a Motion to Recuse and Disqualify Judge (Cv. Doc. #15) based on personal bias and demonstrated prejudice against petitioner. Petitioner's attached Affidavit (Cv. Doc. #16) points to various rulings, factual findings, and comments made by the undersigned during the course of the proceedings.

Title 28, U.S.C. Section 455(a) provides, in relevant part: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Under § 455(a), recusal is appropriate only if "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (quotation omitted). Generally, "an allegation of bias sufficient to require disqualification under . . . section 455 must demonstrate that the alleged bias is personal as opposed to judicial in nature." United States v. Meester, 762 F.2d 867, 884 (11th Cir. 1985). Bias must stem from an extrajudicial source unless "such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." Id. at 885 (quotation omitted). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S.

540, 555 (1994). Petitioner has failed to satisfy this standard. Petitioner's Motion to Recuse and Disqualify Judge (Cv. Doc. #15) is therefore denied.

Accordingly, it is now

**ORDERED**:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2. Petitioner's Motion for Summary Judgment on his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Cv. Doc. #21) is **DENIED** as moot.

3. Petitioner's Motion for Discovery and Inspection (Cv. Doc. #13) is **DENIED**.

4. Petitioner's Motion to Recuse and Disqualify Judge (Cv. Doc. #15) is **DENIED**.

5. The Clerk of the Court shall enter judgment accordingly and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**DONE AND ORDERED** at Fort Myers, Florida, this __9th__ day of February, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record
Donald J. Deverso

-47-